# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| GERALD G. BOHR, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security, <br><br> Defendant. | No. 16-CV-2108-LTS <br><br> **REPORT AND RECOMMENDATION** |

The claimant, Gerald G. Bohr (Claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability and disability insurance benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant contends that the Administrative Law Judge (ALJ) erred in determining that he was not disabled.

For the reasons that follow, I recommend the District Court affirm the Commissioner's decision.

## I. BACKGROUND

I adopt the facts as set forth in the parties' Joint Statement of Facts and therefore only summarize the pertinent facts here. (Doc. 11). Claimant was born in August 1968 and was therefore 46 years old at the time of the ALJ's decision. (AR 11, 218).[1] Claimant has a high school education and attended college for three years. (AR 27, 243). The ALJ concluded that Claimant is unable to perform past relevant work. (AR 26).

On July 8, 2013, Claimant protectively filed an application for disability and disability insurance benefits alleging a disability onset date of August 1, 2010. (AR 11).

---

[1] "AR" refers to the administrative record below.

The ALJ found Claimant was disabled due to degenerative disc bilateral knees, status-post total knee replacement; osteoarthritis; obesity; and depression. (AR 13).

The Social Security Administration denied Claimant's disability application initially and on reconsideration. (AR 11). On June 26, 2015, ALJ Julie K. Bruntz found Claimant was not disabled. (AR 28). Claimant requested timely review of the ALJ's decision and the Appeals Council denied review on July 28, 2016. (AR 1-3, 5). The ALJ's decision, thus, became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On September 20, 2016, Claimant filed a complaint in this Court. (Doc. 3). Between March and April 2017, the parties briefed the issues. (Docs. 12, 13). On April 18, 2017, this Court deemed this case fully submitted and ready for decision. (Doc. 14). On the same day, the Honorable Leonard T. Strand, Chief United States District Court Judge, referred this case to United States Magistrate Judge Kelly Mahoney; on June 22, 2017, this case was reassigned to the undersigned, Chief United States Magistrate Judge C.J. Williams for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities. *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(b).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant can still do his past relevant work, then he is considered not disabled.

Past relevant work is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his [ ] physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. (*Id.*). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

Where a claimant has been found to be disabled by a different administrative agency, the ALJ considering the claimant's application for benefits from the Social Security Administration should consider the other agency's finding of disability, but is not bound by the findings of another agency. 20 C.F.R. § 1504; *Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006); *Jenkins v. Chater*, 76 F.3d 231, 233 (8th Cir. 1996) ("This court has held that a disability determination by the Veterans Administration is not binding on the ALJ." (internal citations omitted)). The ALJ should, however, give

the VA's finding "explicit attention." *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998). Furthermore, the disability standards set forth by the Department of Veterans Affairs and by the Social Security Administration are not identical. *Jenkins*, 76 F.3d at 233 ("Notwithstanding the finding of disability by another agency, the ALJ's determination that [Claimant] is not disabled under the regulations set forth by the Social Security Administration is supported by strong evidence in the record as a whole.").

### III.   THE ALJ'S FINDINGS

The ALJ made the following findings at each step:

At Step One, the ALJ found Claimant had not engaged in substantial gainful activity since August 1, 2010, the alleged onset date. (AR 13).

At Step Two, the ALJ found Claimant had the severe impairments of "degenerative disc disease bilateral knees, status post-total knee replacement; osteoarthritis; obesity; and depression." (AR 13).

At Step Three, the ALJ found that none of Claimant's impairments equaled a presumptively disabling impairment listed in the relevant regulations. (AR 14).

At Step Four, the ALJ found Claimant had the residual functional capacity to perform sedentary work, with the following additional functional limitations:

> [C]laimant could occasionally lift and carry twenty pounds and could frequently lift and carry ten pounds. . . . could stand and walk for two hours in an eight-hour day, and sit for six hours in an eight-hour day. [Claimant's] ability to push and pull, including the operation of hand and foot controls, would be unlimited within those weights. [Claimant] could occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds, occasionally balance, stoop, kneel and crouch, but never crawl. [Claimant] would be limited to short-lived, superficial contact with the public, co-workers and supervisors. . . . [C]laimant would need to be able to alternate between sitting and standing at will but would be able to remain on task while doing so.

(AR 15). Also at Step Four, the ALJ determined Claimant was unable to perform any past relevant work. (AR 26).

At Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Claimant can perform. (AR 27). As a result, the ALJ determined that Claimant was not disabled. (AR 28).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey*, 433 F.3d at 577; *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (citations and internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, does not

"reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion" (citation omitted).).

## V. DISCUSSION

Claimant argues that the ALJ's residual functional capacity assessment at Step Four was flawed because: (1) the ALJ failed to evaluate properly the work-related limitations from examining physician Dr. Noli Mendoza (Doc. 12, at 3-7); (2) the ALJ failed to give good reasons for discounting the Department of Veterans Affairs' finding of one hundred percent disability and "individual unemployability" (Doc. 12, at 7-9); (3) the ALJ's residual functional capacity assessment was not supported by substantial medical evidence from a treating or examining source (Doc. 12, at 9-11); and (4) the ALJ discounted Claimant's subjective allegations without identifying inconsistencies in the record as a whole (Doc. 12, at 11-16). I will address each issue in turn.

### A. *The ALJ's Evaluation of Examining Physician's Opinion*

Claimant argues the ALJ erred in failing to give the opinions of examining physician Dr. Noli Mendoza, D.O., sufficient weight and that the ALJ improperly discounted Dr. Mendoza's opinion as being internally inconsistent. (Doc. 12, at 3-7).

Specifically, Claimant argues that the medical evidence Dr. Mendoza gathered—and that the ALJ accepted—was wholly consistent with Dr. Mendoza's ultimate opinion. (*Id.*). Key to Claimant's argument is the proposition that the ALJ "failed to cite the opinion of any examining or non-examining physician that conflicted with Dr. Mendoza's conclusions," which led to the ALJ "playing doctor" and thus overstepping her authority. (*Id.*, at 6-7).

Dr. Mendoza performed compensation and pension evaluations on Claimant in February and September 2012. (AR 23). Although Dr. Mendoza was a treating physician and did opine that Claimant could not perform sedentary or light work, could not sit for extended periods greater than fifteen minutes, and could not walk more than a few yards, Dr. Mendoza also found that Claimant could lift, carry, push, and pull up to twenty pounds. (AR 404-05). Notably, Dr. Mendoza offered no support for his findings that Claimant was limited in sitting, standing, and walking greater than a few yards. (*Id.*). Absent substantiation for the assertion that Claimant was limited in these activities, coupled with Dr. Mendoza's finding that Claimant could handle upwards of twenty pounds, the ALJ found that Dr. Mendoza's opinions were internally inconsistent. (*Id.*).

The ALJ further found that prior to Dr. Mendoza's evaluations, Claimant reportedly had no issues with daily activities, "could walk and climb stairs okay," and had reported only "mild to moderate functional impairment during flare-ups, but . . . this was 'annoying mostly.'" (AR 23). Subsequent to Dr. Mendoza's evaluations, Claimant reported in May 2013 that he was able to walk up to three miles, assisted with Memorial Day celebrations, went camping, horseback riding, and served as a volunteer football coach for his son's team. (AR 23). Finally, following knee surgery, Claimant's condition improved and was progressing as expected. (AR 24). In December 2014, Claimant walked up to one mile twice per week and was assessed no walking restrictions. (*Id.*).

As Claimant's "admissions and reported activities appeared considerably inconsistent with the opinions of Dr. Mendoza," the ALJ afforded Dr. Mendoza's

8

opinions little weight. (*Id.*). An ALJ must determine a claimant's residual functional capacity based on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations," but "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016) (alterations in original) (citation and internal quotation marks omitted). A treating physician's medical opinions are given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence." *See Choate v. Barnhart*, 457 F.3d 865, 869 (8th Cir. 2006) (internal citation and quotation marks omitted). A treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. *See Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013) ("We conclude that substantial evidence supports the ALJ's determination that [the doctor's] opinion was inconsistent with the treatment record and thus not entitled to controlling weight."); *Anderson v. Astrue*, 696 F.3d 790, 793-94 (8th Cir. 2012) (same). Similarly, an ALJ may discount the weight given to a treating physician's opinion if the treatment notes simply do not support the limitations endorsed in the opinion. *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (holding that a treating physician's opinion is entitled to less weight if it is unsupported by the physician's own records).

In the instant case, the ALJ correctly found that the treating doctor's records did not support the limitations imposed and that substantial evidence on the record as a whole was inconsistent with Dr. Mendoza's opinion such that Dr. Mendoza's opinion should not be given controlling weight. Rather, Dr. Mendoza's opinions consisted of conclusory assertions that lacked medical support. *See Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) ("It is appropriate . . . to disregard statements of opinion by a treating physician that consist[ ] of nothing more than vague, conclusory statements.") (internal

9

quotation marks and citation omitted). Although the lack of support in Dr. Mendoza's records makes it difficult to assess any claim of internal inconsistency, that same lack of support provides a basis upon which the ALJ could properly discount Dr. Mendoza's opinion. *See Strongson*, 361 F.3d at 1070 (holding that medical opinions lacking support may be disregarded); *Cline*, 771 F.3d at 1104 (holding that unsupported medical opinions may be given less weight).

Furthermore, the ALJ properly turned to the remaining substantial evidence in the record in denying Claimant's claim. *Myers*, 721 F.3d 521; *Anderson*, 696 F.3d at 793-94; *Choate*, 457 F.3d at 869. Claimant's own assertions regarding his daily activities and occasional physical activities contradicted Dr. Mendoza's opinion; as a result, the ALJ could properly afford Dr. Mendoza's opinion less weight. (*Id.*). Significantly, the ALJ relied on Claimant's own admission, made in June 2013, that with some assistance from the VA, "there are a lot of jobs I could do." (AR 21, 512). Although the ALJ noted that Claimant's father provided a report and testimony that did support Claimant's allegations, the ALJ also found that this evidence did not establish that Claimant was disabled. (AR 26). As this Court does not re-weigh the evidence, I find that the ALJ made a valid determination as to the weight to be afforded to Dr. Mendoza's opinion. *Vester*, 416 at 889.

Therefore, I find that there is substantial evidence in the record as a whole to support giving Dr. Mendoza's opinion less weight in the ALJ's assessment of Claimant's residual functional capacity.

### B. *The ALJ's Evaluation of the Department of Veterans Affairs' finding of Disability*

Claimant agrees that another agency's disability determination is not binding on the ALJ; however, Claimant goes on to argue that the ALJ was required to consider the VA's disability determination and, because the ALJ's conclusion was inconsistent with that of the VA, the ALJ was required to explain the rationale behind rejecting the VA's finding of disability. Additionally, Claimant asserts that there is little, if any, difference

between the VA's definition of disability and the Social Security Act's definition of disability, which further warrants an explanation for the denial of benefits.

Contrary to Claimant's assertions, the ALJ did fully consider the evidence underlying the VA's disability determination. In addition to noting that Claimant had only a seventy percent service connected disability and was paid at one hundred percent due to a finding of unemployability (AR 16, 23, 44), the ALJ went on to address the evidence underlying the VA's decision. Notably, the ALJ determined that Dr. Paul Pellett, M.D., who treated Claimant in connection with his VA claim, made findings that were inconsistent with both his own treatment notes and with the substantial evidence in the record as a whole. (AR 22-23). The Eighth Circuit Court of Appeals has repeatedly held that where an ALJ considers the evidence underlying another agency's finding of disability, this consideration is sufficient to satisfy the demand to give such a finding explicit attention. *Baker v. Colvin*, 620 F. App'x 550, 555 (8th Cir. 2015); *Pelkey*, 433 F.3d at 579 ("[T]he ALJ did not err because he fully considered the evidence underlying the VA's final conclusion that [Claimant] was 60 percent disabled."). Thus, although the ALJ did not explicitly reference the VA's determination throughout her own decision, the ALJ's thorough assessment of the evidence used in the VA's determination shows that the ALJ did, in fact, give explicit attention to the VA's finding. The ALJ was not bound by the VA's finding and thus was fully entitled to find that Claimant was not entitled to disability benefits following a consideration of the VA's finding. 20 C.F.R. § 1504; *Pelkey*, 433 F.3d at 579; *Jenkins*, 76 F.3d at 233.

Claimant's argument that the similarities in the definitions of "disability" used by the VA and by the Social Security Administration warrant that the ALJ give greater consideration to the VA's finding is without merit. Although the definitions may bear some similarities to one another, each agency is governed by different case law in making its determinations and, as previously stated, the ALJ was not bound by the decision of the VA. Thus, even if the definitions were identical in every way, the ALJ could still

properly find differently than the VA. *See Jenkins*, 76 F.3d at 233 (holding that the definitions governing the VA and the Social Security Administration are not identical).

Therefore, I find the ALJ did fully consider the evidence underlying the VA's finding of disability and the ALJ did properly decline to adopt the VA's determination as her own. The ALJ did not err with respect to her analysis of the VA's finding.

### C. *The ALJ's Use of Substantial Medical Evidence in the RFC Assessment*

Claimant next argues that the ALJ's residual functional capacity assessment is flawed because it is not supported by substantial medical evidence from a treating or examining source.

It is well established that this Court must consider whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion. . . . An ALJ's decision is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." *Id.* (quotation marks and internal citations omitted). Further, "[i]t is appropriate . . . to disregard statements of opinion by a treating physician that consist[ ] of nothing more than vague, conclusory statements. In addition, the ALJ need not give controlling weight to a physician's RFC assessment that is inconsistent with other substantial evidence in the record." *Strongson*, 361 F.3d at 1070.

In *Strongson v. Barnhart*, as in this case, the ALJ gave little probative value to a treating physician's opinion when that opinion was internally inconsistent; the Eighth Circuit Court of Appeals upheld this conclusion. (*Id.*). Here, the ALJ found that Dr. Mendoza's opinions were conclusory and did not provide any support for the findings that Claimant could not sit for extended periods of time and could not walk more than a few yards. (AR 23). Furthermore, as discussed extensively above, Claimant's admissions regarding his physical activities, capabilities, and potential ability to work with some assistance from the VA provided an adequate basis upon which the ALJ could find conflict with Dr. Mendoza's opinion and therefore not accord Dr. Mendoza's opinion

controlling weight. Note that while the ALJ did not wholly disregard Dr. Mendoza's opinion—rather, the ALJ "afforded [Dr. Mendoza's] opinions little weight (AR 24)—an ALJ has the discretion to disregard such conclusory statements as those rendered by Dr. Mendoza, contrary to what Claimant may argue. Finally, while affording little weight to Dr. Pellett's ultimate conclusion of Claimant's inability to work, the ALJ spent a significant amount of time discussing the medical evidence provided by Dr. Pellett in evaluating Claimant's disability status. As the ALJ clearly did rely on Dr. Pellett's underlying medical opinions, and only refused reliance on those findings that were within the ALJ's prerogative, the ALJ's ultimate denial of disability benefits was supported by medical evidence. (AR 22).

Finally, the substantial evidence in the record as a whole convinces me that a reasonable mind could agree with the ALJ and, thus, the ALJ was within her zone of choice in issuing the denial of benefits. The Court will not overturn an ALJ's decision simply because another fact finder could have reached an alternative conclusion. *Casey*, 503 F.3d at 691. In addition to the medically inconsistent findings and Claimant's self-reported statements regarding work capabilities and physical activities, the ALJ found it persuasive that Claimant sought limited treatment for his alleged disabling impairments and subsequently purchased a home and lived independently. (AR 25). In addition, Claimant was able to walk significant distances, climb stairs, and eventually enjoyed no walking restrictions. (AR 25-26). The substantial evidence presented shows that a reasonable mind could have found as the ALJ did. As such, this Court will not overturn the ALJ's decision for lack of substantial evidence.

I find the ALJ properly assessed the medical evidence presented and that the ALJ's decision was supported by substantial evidence in the record as a whole. As such, I recommend the Court decline to overturn the ALJ's decision on this basis.

### D. The ALJ's Evaluation of Claimant's Subjective Allegations

Claimant's final argument is that the ALJ erroneously discredited Claimant's subjective complaints of pain, misconstrued Claimant's reports of his physical activities, and applied the wrong legal standard in determining that Claimant was capable of competitive employment.

As discussed above, the ALJ properly found that Claimant's subjective complaints were not supported by the objective medical evidence presented. Claimant testified to experiencing back and knee pain when sitting or standing for too long, difficulty sleeping, issues with his timing being off, and taking more baths due to the pain. (AR 16, 53-57). However, Claimant had no difficulties with personal care tasks, was able to drive to appointments, shop, mow the lawn, and help coach football. (AR 16, 62-63). Further, the ALJ found that Claimant's medical records revealed Claimant had full range of motion in his left knee, no instability, and showed normal progression following surgery on his left knee. (AR 18-19). Significantly, during a pre-operative appointment before his left knee arthroplasty in February 2014, Claimant informed the physician that he could perform activities of daily living without a problem, could walk and climb stairs okay, and denied back pain, weakness, and paresthesias.[2] (AR 18-19). The physician noted unremarkable physical examination findings. (*Id.*).

In August 2014, Claimant reported painless range of motion in his left knee, 5/5 strength, and intact sensation. He reported that his most significant pain was with kneeling and, in December 2014, Claimant reported that he was unable to kneel due to the pain. (AR 19). The ALJ, however, found these statements inconsistent with Claimant's testimony. (*Id.*). Furthermore, Claimant was walking up to one mile twice per week in December 2014 and walked to visit his neighbor daily; the physician even recommended that Claimant increase his physical activity by walking for ten minutes three times per day and gradually increasing. (*Id.*).

---

[2] Paresthesias is an abnormal sensation of tingling, numbness, or burning.

Although Claimant reported limitations due to his degenerative disc disease, he sought limited treatment for his back pain, which was controlled and manageable on medications (AR 25, 523, 525, 730), and which improved with chiropractic treatment (AR 527). Additionally, Claimant was referred to physical therapy for his back issues, however, as of March 2011, his treatment was terminated due to Claimant's repeated failure to show up for several scheduled appointments. (AR 17, 452-53). As a result of the conflicting evidence presented, the ALJ found that Claimant's reported activities and treatment history were inconsistent with Claimant's subjective complaints of pain.

A court reviews an ALJ's credibility determination through an examination of the *Polaski* factors and the mandates of SSR 96-7p. Under the *Polaski* factors, an ALJ must consider the "claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the Court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

In *Lowe*, the Eighth Circuit Court of Appeals stated, "[t]he ALJ was not required to discuss methodically each *Polaski* consideration, so long as he acknowledged and examined those considerations before discounting [claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (internal citation omitted). If the ALJ gives a good reason for discrediting a claimant's credibility, then the court will defer to the ALJ's judgment "even if every factor is not discussed in depth." *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (internal citation omitted). "Although the ALJ may disbelieve a claimant's allegations of pain, credibility determinations must be supported by substantial evidence." *Jeffery v. Sec'y of Health & Human Servs.*, 849 F.2d 1129, 1132 (8th Cir. 1988) (internal citation omitted). "Moreover, the ALJ must make express

15

credibility determinations and set forth the inconsistencies in the record that lead him to reject the claimant's complaints." (*Id.*). "Where objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (internal citation omitted).

Here, the ALJ found Claimant's testimony regarding his subjective complaints of pain were inconsistent with the medical records and his self-reported physical activities. An ALJ may properly discount subjective complaints if inconsistencies exist in the record as a whole. *Polaski*, 739 F.2d at 1322; *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006); *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). Upon my own review of the record, I find that the ALJ's finding is well supported and adequately detailed in the decision.

As an initial matter, the ALJ's *Polaski* analysis is not tainted by a flawed evaluation of Dr. Mendoza's opinion, as Claimant asserts. (Doc. 12, at 12). Rather, I have already determined the ALJ afforded Dr. Mendoza's opinion sufficient weight and, even if the ALJ did err in this respect, the remaining evidence in the record supports the ALJ's determination that Claimant's credibility should be discounted.

The ALJ did not disregard Claimant's allegations of pain, as the ALJ incorporated into her residual functional capacity assessment limitations on how much weight Claimant could lift and carry, restrictions on his ability to sit, stand, walk, kneel, and crouch, and determined that Claimant could never crawl. (AR 15). Further, Claimant's back pain was well controlled and manageable with medication, and he progressed in the normal fashion following knee surgery. Significantly, Claimant's statements to medical providers regarding his physical abilities and activities, as well as his complaints of pain, show wide variances from the allegations Claimant testified to.

The case law is clear that an ALJ may consider noncompliance with medical treatment as detracting from a claimant's credibility. *See, e.g.*, *Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) (holding that a claimant's failure to comply with medical

16

treatment diminished the claimant's credibility); *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (same); *Holley v. Massanari*, 253 F.3d 1088, 1091-92 (8th Cir. 2001) (same). Here, Claimant's own failure to attend several scheduled physical therapy appointments resulted in his being prevented from pursuing future treatment through that provider; this failure to keep physical therapy appointments is not indicative of an individual suffering from physical pain to the extent Claimant alleges.

Claimant correctly asserts that an applicant need not be bedridden to lack the capacity to work. *Wagner v. Astrue*, 499 F.3d 842, 851-52 (8th Cir. 2007) (noting that although a claimant need not be bedridden to be disabled, an ALJ may take into account the degree to which a claimant's daily activities are inconsistent with the alleged severity of impairments). However, the ALJ's determination rested on far more substantial evidence than Claimant suggests. Although Claimant's daily and occasional activities (*e.g.*, acting as a football coach, participating in Memorial Day celebrations as part of the honor guard, and assisting with mowing the lawn) evidenced remarkable inconsistencies with Claimant's allegations, the ALJ considered not only Claimant's significant daily activities in making her determination, but also considered the medical evidence and Claimant's ability to manage his pain. As a result, the ALJ's consideration of Claimant's activities in her residual functional capacity analysis was sufficient.

Finally, Claimant argues the ALJ applied the wrong legal standard in determining that Claimant was not entitled to disability benefits, in part, because he could work with the appropriate accommodations. Specifically, Claimant argues the ALJ improperly relied on Claimant's admission that Claimant could work with some assistance from the VA. (Doc. 12, at 15). Claimant correctly asserts that disability benefits may not be denied if a claimant would be able to work *only* if an employer would be willing to make accommodations under the Americans with Disabilities Act. *Eback v. Chater*, 94 F.3d 410, 412 (8th Cir. 1996). However, the record is inconclusive as to exactly what kind of assistance Claimant was referring to when he stated that "There are a lot of jobs I could do!" with some assistance from the VA healthcare system. (AR 512). It is certainly

not clear that Claimant was referring to an employer's willingness to make accommodations for Claimant's physical impairments. Furthermore, even if the ALJ did erroneously rely on this statement, which I am not convinced is the case, the ALJ provided adequate alternative support for her determination that Claimant's subjective allegations could be discounted.

The ALJ's basis for discounting Claimant's credibility was detailed and specific, with references throughout to the record. Although the Court could reach a different credibility finding, I find there is substantial evidence in the record as a whole to support the ALJ's credibility findings in this case. Where an ALJ gives good reason for discrediting a claimant's testimony, a reviewing court should defer to the ALJ's credibility findings. *Halverson v. Astrue*, 600 F.3d 922, 931-33 (8th Cir. 2010). Accordingly, I recommend the Court find the ALJ did not err in her credibility findings.

## VI. CONCLUSION

For the reasons set forth herein, I find the ALJ acted well within the zone of choice within which the Commissioner may act. *Culbertson*, 30 F.3d at 939. Therefore, I respectfully recommend the District Court **affirm** the Commissioner's determination that Claimant was not disabled, and enter judgment against Claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 7th day of September, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa